COMMISSIONERS OF LARAMIE COUNTY v. COMMISSIONERS OF ALBANY COUNTY ET AL.

1. Unless the constitution of a State or the organic law of a Territory otherwise prescribes, the legislature has the power to diminish or enlarge the area of a county, whenever the public convenience or necessity requires.
2. Where the legislature of Wyoming Territory organized two new counties, and included within their limits a part of the territory of an existing county, but made no provision for apportioning debts or liabilities, — *Held,* that the old county, being solely responsible for the debts and liabilities it had previously incurred, had, on discharging them, no claim upon the new counties for contribution.

APPEAL from the Supreme Court of the Territory of Wyoming.

Mr. *W. R. Steele* for the appellants.

Mr. *A. H. Jackson, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Counties, cities, and towns are municipal corporations, created by the authority of the legislature; and they derive all their powers from the source of their creation, except where the constitution of the State otherwise provides. Beyond doubt, they are, in general, made bodies politic and corporate; and are usually invested with certain subordinate legislative powers, to facilitate the due administration of their own internal affairs, and to promote the general welfare of the municipality. They have no inherent jurisdiction to make laws, or to adopt governmental regulations; nor can they exercise any other powers in that regard than such as are expressly or impliedly derived from their charters, or other statutes of the State.

Trusts of great moment, it must be admitted, are confided to such municipalities; and, in turn, they are required to perform many important duties, as evidenced by the terms of their respective charters. Authority to effect such objects is conferred by the legislature; but it is settled law, that the legislature, in granting it, does not divest itself of any power over the inhabitants of the district which it possessed before the charter was granted. Unless the Constitution otherwise provides, the legislature still has authority to amend the charter of such a corporation, enlarge or diminish its powers, extend or limit its boundaries, divide the same into two or more, consolidate two or more into one, overrule its action whenever it is deemed unwise, impolitic, or unjust, and even abolish the municipality altogether, in the legislative discretion. Cooley on Const., 2d ed., 192.

Sufficient appears to show that the complainant county was first organized under the act of the 3d of January, 1868, passed by the legislature of the Territory of Dacotah, which repealed the prior act to create and establish that county. When organized, the county was still a part of the Territory, and embraced within its territorial limits all the territory now comprising the counties of Laramie, Albany, and Carbon, in the Territory of Wyoming, — an area of three and one-half degrees from east to west, and four degrees from north to south. Very heavy expenses, it seems, were incurred by the

county during that year and prior thereto, greatly in excess of their current means, as more fully explained in the bill of complaint, which increased the indebtedness to the sum of $28,000. Other liabilities, it is alleged, were also incurred by the authorities of the county during that period, which augmented their indebtedness to the sum of $40,000 in the aggregate.

Pending these embarrassments, the charge is, that the legislature of the Territory passed two acts on the same day, — to wit, Dec. 16, 1868, — creating the counties of Albany and Carbon out of the western portion of the territory of the complainant county, reducing the area of that county more than two-thirds; that, by the said acts creating said new counties, fully two-thirds of the wealth and taxable property previously existing in the old county were withdrawn from its jurisdiction, and its limits were reduced to less than one-third of its former size, without any provision being made in either of said acts that the new counties, or either of them, should assume any proportion of the debt and liabilities which had been incurred for the welfare of the whole before these acts were passed.

Payment of the outstanding debt having been made by the complainant county, the present suit was instituted in her behalf to compel the new counties to contribute their just proportion towards such indebtedness. Attempt is made to show that an equitable cause of action exists in the case by referring to the several improvements made in that part of the Territory included in the new counties before they were incorporated, and by referring to the great value of the property withdrawn from taxation in the old county, and included within the limits of the newly-created counties.

Process was served, and the respondents appeared and filed separate demurrers to the bill of complaint. Hearing was had in the District Court of the Territory, where the suit was commenced; and the court entered a decree sustaining the demurrers, and dismissing the bill of complaint. Immediate appeal was taken by the complainant to the Supreme Court of the Territory, where, the parties having been again heard, the Supreme Court entered a decree affirming the decree of the District Court, and the present appeal is prosecuted by the complainant.

Two errors are assigned, as follows : (1.) That the Supreme Court erred in affirming the decree of the District Court sustaining the demurrers of the respondents to the bill of complaint.    (2.) That the Supreme Court erred in rendering judgment for the respondents.

Corporations of the kind are properly denominated public corporations, for the reason that they are but parts of the machinery employed in carrying on the affairs of the State ; and it is well-settled law, that the charters under which such corporations are created may be changed, modified, or repealed, as the exigencies of the public service or the public welfare may demand.    2 Kent, Com., 12th ed., 305; Angell & Ames on Corp., 10th ed., sect. 31; *McKim* v. *Odom*, 3 Bland, 407 ; *St. Louis* v. *Allen*, 13 Mo. 400 ; *The Schools* v. *Tatman*, 13 Ill. 27 ; *Yarmouth* v. *Skillings*, 45 Me. 141.

Such corporations are composed of all the inhabitants of the Territory included in the political organization ; and the attribute of individuality is conferred on the entire mass of such residents, and it may be modified or taken away at the mere will of the legislature, according to its own views of public convenience, and without any necessity for the consent of those composing the body politic.    1 Greenl. Ev., 12th ed., sect. 331.

Corporate rights and privileges are usually possessed by such corporations ; and it is equally true that they are subject to legal obligations and duties, and that they are under the entire control of the legislature, from which all their powers are derived.    Sixty-five years before the decree under review was rendered, a case was presented to the Supreme Court of Massachusetts, sitting in Maine, which involved the same principle as that which arises in the case before the court.    Learned counsel were employed on both sides, and Parsons was Chief Justice of the court, and delivered the opinion.    First he adverted to the rights and privileges, obligations and duties, of a town, and then proceeded to say, " If a part of its territory and inhabitants are separated from it by annexation to another, or by the erection of a new corporation, the former corporation still retains all its property, powers, rights, and privileges, and remains subject to all its obligations and duties, unless some

new provision should be made by the act authorizing the separation." *Windham* v. *Portland*, 4 Mass. 389.

Decisions to the same effect have been made since that time in nearly all the States of the Union where such municipal subdivisions are known, until the reported cases have become quite too numerous for citation. Nor are such citations necessary, as they are all one way, showing that the principle in this country is one of universal application. · Concede its correctness, and it follows that the old town, unless the legislature otherwise provides, continues to be seized of all its lands held in a proprietary right, continues to be the sole owner of all its personal property, is entitled to all its rights of action, is bound by all its contracts, and is subject to all the duties and obligations it owed before the act was passed effecting the separation.

Suppose that is so as applied to towns : still it is suggested that the same rule ought not to be applied to counties; but it is so obvious that the suggestion is without merit, that it seems unnecessary to give it any extended examination. *County of Richland* v. *County of Lawrence*, 12 Ill. 8.

Public duties are required of counties as well as of towns, as a part of the machinery of the State; and, in order that they may be able to perform those duties, they are vested with certain corporate powers; but their functions are wholly of a public nature, and they are at all times as much subject to the will of the legislature as incorporated towns, as appears by the best text-writers upon the subject and the great weight of judicial authority.

Institutions of the kind, whether called counties or towns, are the auxiliaries of the State in the important business of municipal rule, and cannot have the least pretension to sustain their privileges or their existence upon any thing like a contract between them and the legislature of the State, because there is not and cannot be any reciprocity of stipulation, and their objects and duties are utterly incompatible with every thing of the nature of compact. Instead of that, the constant practice is to divide large counties and towns, and to consolidate small ones, to meet the wishes of the residents, or to promote the public interests, as understood by those who control

the action of the legislature. Opposition is sometimes manifested; but it is everywhere acknowledged that the legislature possesses the power to divide counties and towns at their pleasure, and to apportion the common property and the common burdens in such manner as to them may seem reasonable and equitable. *School Society* v. *School Society*, 14 Conn. 469; *Bridge Co.* v. *East Hartford*, 16 id. 172; *Hampshire* v. *Franklin*, 16 Mass. 76; *North Hemstead* v. *Hemstead*, 2 Wend. 109; *Montpelier* v. *East Montpelier*, 29 Vt. 20; *Sill* v. *Corning*, 15 N. Y. 197; *People* v. *Draper*, id. 549; *Waring* v. *Mayor*, 24 Ala. 701; *Mayor* v. *The State*, 15 Md. 376; *Ashby* v. *Wellington*, 8 Pick. 524; *Baptist So.* v. *Candia*, 2 N. H. 20; *Denton* v. *Jackson*, 2 Johns. Ch. 320.

Political subdivisions of the kind are always subject to the general laws of the State; and the Supreme Court of Connecticut decided that the legislature of that State have immemorially exercised the power of dividing towns at their pleasure, and upon such division to apportion the common property and the common burdens as to them shall seem reasonable and equitable. *Granby* v. *Thurston*, 23 Conn. 419; *Yarmouth* v. *Skillings*, 45 Me. 142; *Langworthy* v. *Dubuque*, 16 Iowa, 273; *Justices' Opinion*, 6 Cush. 577.

Such corporations are the mere creatures of the legislative will; and, inasmuch as all their powers are derived from that source, it follows that those powers may be enlarged, modified, or diminished at any time, without their consent, or even without notice. They are but subdivisions of the State, deriving even their existence from the legislature. Their officers are nothing more than local agents of the State; and their powers may be revoked or enlarged and their acts may be set aside or confirmed at the pleasure of the paramount authority, so long as private rights are not thereby violated. *Russel* v. *Reed*, 27 Penn. St. 170.

Civil and geographical divisions of the State into counties, townships, and cities, said Thompson, C. J., had its origin in the necessities and convenience of the people; but this does not withdraw these municipal divisions from the supervision and control by the State in matters of internal government. Proof of that is found in the fact that the legislature often exercises

the power to exempt property liable to taxation, and in many other instances imposes taxes on what was before exempt, or increases the antecedent burdens in that behalf. It changes county sites, and orders new roads to be opened and new bridges to be built at the expense of the counties; and no one, it is supposed, disputes the exercise of such powers by the legislature. *Burns* v. *Clarion County*, 62 Penn. St. 425 ; *People* v. *Pinkney*, 32 N. Y. 393 ; *St. Louis* v. *Russell*, 9 Mo. 507.

Old towns may be divided, or a new town may be formed from parts of two or more existing towns ; and the legislature, if they see fit, may apportion the common property and the common burdens, even to the extent of providing that a certain portion of the property of the old town shall be transferred to the new corporation. *Bristol* v. *New Chester*, 3 N. H. 521.

In dividing towns, the legislature may settle the terms and conditions on which the division shall be made. It may enlarge or diminish their territorial liabilities, may extend or abridge their privileges, and may impose new liabilities. Towns, says Richardson, C. J., are public corporations, created for purposes purely public, empowered to hold property, and invested with many functions and faculties to enable them to answer the purposes of their creation.

There must, in the nature of things, be reserved, by necessary implication, in the creation of such corporations, a power to modify them in such manner as to meet the public exigencies. Alterations of the kind are often required by public convenience and necessity ; and we have the authority of that learned judge for saying that it has been the constant usage, in all that section of the Union, to enlarge or curtail the power of towns, divide their territory, and make new towns, whenever the convenience of the public requires that such a change should be made.

Half a century ago, when that decision was made, the authority of the legislature to make such a division of a municipal corporation was deemed to be without doubt; and the same court decided that the power to divide the property of a municipal corporation is necessarily incident to the power to divide its territory and to create the new corporation. *Darlington* v.

*Mayor,* 31 N. Y. 195; *Clinton* v. *Railroad,* 24 Iowa, 475; *Layton* v. *New Orleans,* 12 La. Ann. 516.

Cases doubtless arise where injustice is done by annexing part of one municipal corporation to another, or by the division of such a corporation and the creation of a new one, or by the consolidation of two or more such corporations into one of larger size. Examples illustrative of these suggestions may easily be imagined. (1.) Consolidation will work injustice where one of the corporations is largely in debt and the other owes nothing, as the residents in the non-indebted municipality must necessarily submit to increased burdens in consequence of the indebtedness of their associates. (2.) Like consequences follow where the change consists in annexing a part of one municipal corporation to another, in case the corporation to which those set off are annexed is greatly more in debt than the corporation from which they were set off.

Hardships may also be suffered by the corporation from which a portion of its inhabitants, with their estates, may be set off, in case the corporation is largely in debt, as the taxes of those who remain must necessarily be increased in proportion as the polls and estates within the municipality are diminished. Even greater injustice may arise in cases where the legislature finds it necessary to circumscribe the jurisdiction of a county or town by dividing their territory, and creating new counties or towns out of the territory withdrawn from their former boundaries.

Legislative acts of the kind operate differently under different circumstances. Instances may be given where the hardship is much the greatest towards the new municipality, as where the great body of the property and improvements are left within the new boundaries of the old corporation. Other cases are well known where the hardship is much greater towards the old corporation, as where the newly-created subdivision embraces within its boundaries all the public buildings and most of the public improvements and the most valuable lands. Circumstances of the kind, with many others not mentioned, show beyond doubt that such changes in the subdivisions of a State often present matters for adjustment involving questions of great delicacy and difficulty.

Allusion was made to this subject by the Supreme Court of New Hampshire in the case to which reference has already been made. 3 N. H. 534. Speaking of the power to divide towns, the court in that case say that the power in that regard is strictly legislative; and that the power to prescribe the rule by which a division of the property of the old town shall be divided is incident to the power to divide the territory, and is *in its nature purely legislative.* No general rule can be prescribed by which an equal and just decision in such cases can be made. Such a division, say the court in that case, must be founded upon the circumstances of each particular case; and in that view the court here entirely concurs. *Powers* v. *Commissioners of Wood County,* 8 Ohio St. 290; *Shelby County* v. *Railroad,* 5 Bush, 228; *Olney* v. *Harvey,* 50 Ill. 455.

Regulation upon the subject may be prescribed by the legislature; but, if they omit to make any provision in that regard, the presumption must be that they did not consider that any legislation in the particular case was necessary. Where the legislature does not prescribe any such regulations, the rule is that the old corporation owns all the public property within her new limits, and is responsible for all debts contracted by her before the act of separation was passed. Old debts she must pay, without any claim for contribution; and the new subdivision has no claim to any portion of the public property except what falls within her boundaries, and to all that the old corporation has no claim. *North Hemstead* v. *Hemstead,* 2 Wend. 134; Dil. on Mun. Corp., sect. 128; *Wade* v. *Richmond,* 18 Gratt. 583; *Higginbotham* v. *Com.,* 25 id. 633.

Tested by these considerations, it is clear that there is no error in the record.                    *Decree affirmed.*